**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-0521-WJM-MJW

CIVILITY EXPERTS WORLDWIDE,

      Plaintiff and Counterclaim Defendant,

and

CATHY HULSHOF,
APRIL ROLLINS, and
TANYA MACLIN,

      Intervenor Plaintiffs and Counterclaim Defendants,

v.

MOLLY MANNERS, LLC,

      Defendant and Counterclaim Plaintiff,

and

FELICIA KNOWLES,
SHANNON COMBS, and
MONIKA VIRTA-GUPTA,

      Defendants.

---

**ORDER GRANTING DEFENDANT MOLLY MANNERS' EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

      Plaintiff Civility Experts Worldwide ("Civility Experts") sues Defendant Molly

Manners, LLC ("Molly Manners") for copyright infringement and related causes of

action.  (*See* ECF No. 47.)  Currently before the Court is Molly Manners' Early Motion

for Partial Summary Judgment ("Motion") attacking only Civility Experts' copyright

infringement claim.  (ECF No. 85.)  For the reasons explained below, Molly Manners'

Motion is granted, but, contrary to Molly Manners' view, this outcome does not automatically dispose of Civility Experts' claim for breach of the contract.

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTS[1]

The following facts are undisputed unless otherwise noted.

---

[1] Some of the parties' summary judgment exhibits were filed under Restricted Access, Level 1.  *See* D.C.COLO.LCivR 7.2.  To the extent a Restricted exhibit is quoted or summarized below, the Court has determined that the portion quoted or summarized does not meet the standards for Restricted Access set forth in D.C.COLO.LCivR 7.2(c)(2)–(4).

Civility Experts "is in the business of providing civility training solutions."  (ECF No. 85 at 2, ¶ 2.)[2]  Civility Experts offers, among other things, lesson manuals for teaching manners to children.  (*Id.*)  Three of those lesson manuals are at issue here: *Macaroni and Please* (designed for ages 3–7), *Confidence is Cool* (designed for ages 8–12), and *Proud to Be Polite* (also designed for ages 8–12) (collectively, "Civility Experts' Lessons").  (*See* ECF No. 86-6 at 1; ECF No. 86-7 at 1; ECF No. 86-8 at 1.)  Civility Experts has registered copyrights for each of these Lessons.  (ECF No. 115 at 5, ¶¶ 1–3.)

Molly Manners was formed in 2010, and is also in the business of teaching manners to children.  (ECF No. 85 at 2, ¶ 4.)  Molly Manners purchased Civility Experts' Lessons sometime in 2011.  (*Id.* at 3, ¶¶ 6–9.)  Molly Manners claims it also purchased permission to distribute Civility Experts' Lessons to Molly Manners' licensees.  (*Id.* ¶¶ 6–7.)  Civility Experts denies this, but it appears undisputed that Molly Manners incorporated at least portions of Civility Experts Lessons into three of Molly Manners' own lesson manuals.  (*Compare id.* at 2, ¶ 4 *with* ECF No. 115 at 3, ¶ 4.)

"In the spring of 2013, a dispute arose wherein [Civility Experts] accused Molly Manners of copyright infringement."  (ECF No. 85 at 4, ¶ 11.)  Molly Manners denied the accusation.  (*Id.*)  In April 2013, Civility Experts and Molly Manners entered into a Settlement Agreement (without litigation, apparently).  (*Id.* ¶ 12.)  Through the Settlement Agreement, Molly Manners agreed to

remove all references to [Civility Experts'] copyright[ed]

---

[2] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination.

3

> materials from the main/home website including . . . verbatim lesson names and will stop including such content, in whole or in part, in Molly Manners programs, except for those certain existing licensees of Molly Manners previously granted usage rights who may continue to use such copyright[ed] content . . . . [Civility Experts'] copyright[ed] content will not be extracted, distributed, or duplicated, in print, electronically, or verbally, in whole or in part, for any purpose by Molly Manners.

(ECF No. 86-10 ¶ 1.)

Molly Manners says that it then "modified its teacher guides and materials" to remove any of Civility Experts' copyrighted content.  (ECF No. 85 at 4, ¶ 14.)  Civility Experts denies this and alleges that three Molly Manners lesson manuals continue to infringe Civility Experts' copyrights, and are also a violation of the Settlement Agreement.  (*See* ECF No. 47 ¶¶ 54, 90–107; ECF No. 86-36 at 8–23; ECF No. 115 at 6–11, ¶¶ 1–13.)  The three relevant Molly Manners lesson manuals are: *Nice is Right* (aimed at ages 3–6), *Kool to Be Kind* (aimed at ages 7–11), and *The Young Sophisticate* (aimed at ages 12–17) (collectively, "Molly Manners' Lessons").  (*See* ECF No. 86-11 at 1; ECF No. 86-15 at 1; ECF No. 86-24 at 1.)

In this lawsuit, Civility Experts accuses Molly Manners of breaching the settlement agreement (Count 1), and accuses Molly Manners and some of its licensees of tortious interference with prospective economic advantage (Count 2), copyright infringement (Count 3), unfair competition (Count 4), and false advertising (Count 5).[3]  (ECF No. 47 ¶¶ 90–131.)

---

[3] Civility Experts erroneously labels this false advertising claim as a second Count 4. (*See* ECF No. 47 at 20.)

4

### III.  CONSIDERATIONS REGARDING EARLY SUMMARY JUDGMENT

The undersigned permits an early motion for summary judgment if filed "within 30 days after entry of the initial scheduling order," and if the motion "presents a substantial and well-supported argument for significantly reducing the claims or issues in the case." WJM Revised Practice Standard III.E.2.  Civility Experts interprets "within 30 days after entry of the initial scheduling order" to mean that a party may file an early summary judgment motion no earlier than the date on which the scheduling order is entered. (ECF No. 115 at 12–13.)  Because Molly Manners filed the present Motion on August 14, 2015, and the scheduling order did not enter until September 29, 2015, Civility Experts argues that Molly Manners' Motion should be denied as procedurally improper. (*Id.*)

Civility Experts' interpretation of Practice Standard III.E.2 is incorrect.  "[W]ithin 30 days after entry of the initial scheduling order" only places limits on how late a party may file an early summary judgment motion, not how early.  *See MPVF Lexington Partners, LLC v. W/P/V/C, LLC*, ___ F. Supp. 3d ___, ___ n.1, 2015 WL 5444297, at *1 n.1 (D. Colo. Sept. 16, 2015).  The Court accordingly rejects Civility Experts' argument that Molly Manners did not file its Motion at the proper time.

Nonetheless, the Motion must "present[] a substantial and well-supported argument for significantly reducing the claims or issues in the case."  WJM Revised Practice Standard III.E.2.  In this case, it does.  Civility Experts' copyright infringement claim (Count 3) will likely be a major portion of this case.  Furthermore, Civility Experts specifically links its unfair competition and false advertising claims (Counts 4 and 5) to

5

its copyright infringement allegations.  (*See* ECF No. 47 ¶¶ 118, 121–22, 127, 129–30.)
Early summary judgment on the question of copyright infringement is therefore
appropriate.

## IV.  COPYRIGHT INFRINGEMENT STANDARD

The basic elements of a copyright claim are twofold: "(1) ownership of a valid
copyright, and (2) copying of constituent elements of the work that are original."  *Feist
Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

The second element is itself broken down into multiple inquiries.  It begins with
an analysis of "copying," meaning sufficient proof that the defendant actually "used the
plaintiff's material as a model, template, or even inspiration," as opposed to
coincidentally creating the same or a similar work.  4-13 *Nimmer on Copyright*
§ 13.01[B]; *see also* Alan Latman, *"Probative Similarity" as Proof of Copying: Toward
Dispelling Some Myths in Copyright Infringement*, 90 Colum. L. Rev. 1187, 1189 (1990)
("'copying' . . . is the obverse of independent creation").

A plaintiff may attempt to prove copying through "direct evidence."  *Gates
Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993).  Direct
evidence usually requires "a witness to the physical act of copying."  4-13 *Nimmer on
Copyright* § 13.01[B] (footnote omitted); *see also* American Bar Association, *Model Jury
Instructions: Copyright, Trademark, and Trade Dress Litigation* § 1.5.2 (2008) ("An
example of direct evidence would be an admission by defendant that part or all of the
work was copied.  Direct evidence may also be the credible testimony of a witness who
saw the work being copied.").  But "[d]irect proof of copying is rare," so "plaintiffs will

typically rely on the indirect method of proof." *Gates Rubber*, 9 F.3d at 833.

The indirect method requires (1) evidence that the defendant had access to the copyrighted work, and (2) "probative similarities between the copyrighted material and the allegedly copied material." *Id.* at 832. "Probative similarity" is also sometimes phrased as "substantial similarity." *See Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1289 n.4 (10th Cir. 1996). These terms, however, are not properly interchangeable. Probative similarity is part of the inquiry into whether, as a factual matter, it is more likely than not that the defendant copied from the plaintiff's work: "similarities that, in the normal course of events, would not be expected to arise independently in the two works are probative of defendant's having copied as a factual matter from plaintiff's work." 4-13 *Nimmer on Copyright* § 13.01[B]. Substantial similarity, by contrast, "is a mixed question of fact and law," *O'Neill v. Dell Pub. Co.*, 630 F.2d 685, 687 (1st Cir. 1980),[4] and accommodates the fact that "[n]ot all copying . . . is copyright infringement," *Feist*, 499 U.S. at 361. Substantial similarity thus addresses the ultimate question on liability: assuming the defendant copied at least some amount of the plaintiff's work, did the defendant copy "protectable elements" of the plaintiff's work, and do those "protectable elements comprise a substantial part of the plaintiff's [work] when it is considered as a whole"? *Gates Rubber*, 9 F.3d at 833; *see also Country Kids*, 77 F.3d at 1284 ("A finding that [the defendant] copied some aspect of [the plaintiff's work], however, would not end the court's inquiry, as liability for copyright

---

[4] *See also Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1370 (10th Cir. 1997) ("whether the elements copied by the defendant are protected by copyright" is "a mixed question of law and fact").

infringement will attach only where protected elements of a copyrighted work are copied.  To impose such liability, the court must find substantial similarity between those aspects of [the plaintiff's work] which are legally protectable and the [defendant's work]." (citations omitted)).

What, then, are the protectable elements?  To answer this question, the Tenth Circuit frequently employs the "abstraction-filtration-comparison" test, also sometimes known as the "successive filtration" test.  *Country Kids*, 77 F.3d at 1284 & n.5.  "At the abstraction step, [courts] separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work."  *Id.* at 1284–85.  This stems from two established propositions.  First, "facts are not copyrightable."  *Feist*, 499 U.S. at 344.  Second, "[i]n no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  Thus, "[t]he copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality."  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985).

Given these exclusions for facts, idea, concepts, and the like, demonstrating protectable expression in nonfiction literature, and particularly instructional literature, is comparatively more difficult than demonstrating protectable expression in fiction.  *Cf. Feist*, 499 U.S. at 349 ("copyright in a factual compilation is thin"); *Glass v. Sue*, 2010 WL 4274581, at *3 (C.D. Cal. Oct. 22, 2010) ("In a factual work, such as a technical manual, there is typically a very narrow range of expression.  Therefore, copyright

protection is narrow . . . .").   Such expression may nonetheless include original

phrasing of facts and ideas.  *Feist*, 499 U.S. at 349–50.  It may also include "an original

selection or arrangement" of facts or ideas.  *Id.* at 348; *cf. Enter. Mgmt. Ltd., Inc. v.

Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013) (in a case regarding visual depiction of

unprotectable concepts, courts "must focus on whether [the plaintiff] has selected,

coordinated, and arranged the elements of her diagram in an original way" (internal

quotation marks omitted)).

Following the abstraction analysis, a court must "filter out the nonprotectable

components of the product from the original expression."  *Country Kids*, 77 F.3d at

1285.  When nonfiction works are at issue, as here, such filtering often involves the

doctrines of "merger" and "*scenes a faire*."[5]

"Under the merger doctrine, copyright protection is denied to expression that is

inseparable from or merged with the ideas, processes, or discoveries underlying the

expression."  *Gates Rubber*, 9 F.3d at 838.  The merger doctrine is considered "a

prophylactic device to ensure that courts do not unwittingly grant protection to an *idea*

by granting exclusive rights to the only, or one of only a few, means of *expressing* that

idea."  *Id.* (emphasis added).

The *scenes a faire* doctrine is a particular extension of the idea that matters in

the public domain cannot be copyrighted.  Under *scenes a faire*, courts "deny protection

to those expressions that are standard, stock, or common to a particular topic or that

---

[5] The truly proper spelling of this French phrase includes diacritical marks, *i.e.*, "*scènes à faire*."  Most case law regarding this concept drops the accent marks, and this Court will do the same.

9

necessarily follow from a common theme or setting." *Id.* "The *scenes a faire* doctrine also excludes from protection those elements of a [work] that have been dictated by external factors." *Id.*; *see also Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) ("Neither does copyright protection extend to copyright or 'stock' themes commonly linked to a particular genre.").

Once these nonprotectable aspects of the work have been filtered, a court must "compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar." *Country Kids*, 77 F.3d at 1285. In particular, "the court must find that the defendant copied protectable elements of the plaintiff's [work] and that those protectable elements comprise a substantial part of the plaintiff's [work] when it is considered as a whole." *Gates Rubber*, 9 F.3d at 833.[6]

## V. ANALYSIS

### A. Matters Truly in Dispute

Given the foregoing, the elements of a copyright claim under the circumstances of this case may be summarized as follows:

---

[6] The Tenth Circuit recently described the abstraction-filtration-comparison test as "one method for analyzing substantial similarity," implying that other methods exist. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1141 (10th Cir. 2016). From this Court's review of the relevant case law (in particular, disputes regarding how-to guides, lesson plans, and the like), it appears universal that courts, at a minimum, filter the nonprotectable from the protectable elements in the plaintiff's work, and then compare defendants' work to what remains. This essentially merges abstraction and filtration, but the difference between the two may be semantic anyway. As the Tenth Circuit expressed it in *Country Kids*, abstraction involves "separat[ing]" ideas from their expression, whereas filtration involved "filter[ing] out the nonprotectable components of the product from the original expression." 77 F.3d at 1285. In this context, "separating" and "filtering" are synonyms, although aimed at different levels of generality ("separating" ideas from expression, then "filtering" protectable from nonprotectable expression). *Cf. id.* at 1285–88 (addressing abstraction and filtration under a single heading: "The Abstraction and Filtration Analysis"). This may be why some courts speak of "successive filtration" rather than "abstraction" and "filtration."

1. *Ownership*: Civility Experts owns a valid copyright in its Lessons.

2. *Copying*: Molly Manners—

   a. directly copied Civility Experts' Lessons; or

   b. Molly Manners

      i. had access to Civility Experts' Lessons, and

      ii. Molly Manners' Lessons bear probative similarities to Civility Experts' Lessons.

3. *Substantial Similarity*: After separating ideas from their expression, and filtering protectable from nonprotectable expression in Civility Experts' Lessons, Molly Manners' Lessons contain protectable elements of Civility Experts' Lessons that comprise a substantial part of Civility Experts' Lessons when considered as a whole.

For present purposes, Molly Manners does not dispute Element 1 (ownership) or Element 2(b)(i) (access).  (*See* ECF No. 85 at 9; ECF No. 129 at 4, ¶¶ 1–4.)  Molly Manners says that it is disputing Element 2(b)(ii) (probative similarity), but that is because Molly Manners, like many others, confuses the probative similarity inquiry with the ultimate substantial similarity inquiry.  What Molly Manners really disputes is Element 3 (substantial similarity).  (*See* ECF No. 85 at 9 ("the only element at issue is whether there are probative similarities (a/k/a 'substantial similarity') between the legally protectable elements of Plaintiff's materials and Molly Manners' materials").)

Element 2 is unresolvable at this stage given that Molly Manners' attempted admission of Element 2(b)(i) is not enough to satisfy all of Element 2(b), and Molly Manners does not admit Element 2(a) (direct copying).  However, Elements 1, 2, and 3

are conjunctive, so failure as to any one of them would defeat Civility Experts' copyright claim. Thus, the Court will disregard Elements 1 and 2 for present purposes and move directly to Element 3. *Cf. Gates Rubber*, 9 F.3d at 833 ("Although we suggest that it will often be helpful to make an initial determination of whether the defendant copied portions of the plaintiff's [work] before determining whether the copying involved protectable elements under the copyright law, there may be cases where the issue of protectability can more efficiently be addressed first.").

**B.     The Scope of Civility Experts' Comparisons**

Civility Experts points out numerous alleged similarities between its Lessons and Molly Manners' Lessons. (*See* ECF No. 115 at 6–11; *see also* ECF No. 86-36 at 8–23.) These alleged similarities range from large-scale structure down to word choice in individual sentences. The Court will address Civility Experts' alleged similarities in essentially that large-to-small order, to determine which similarities relate to protectable elements of Civility Experts' Lessons.

Before reaching those alleged similarities, however, the Court must address the scope of Civility Experts' copyright allegations. Specifically, the Court must address Civility Experts' practice, evident at various times below, of drawing out alleged similarities by: (1) comparing a single Civility Experts Lesson to two or more Molly Manners Lessons, collectively; (2) comparing two or more Civility Experts Lessons, collectively, to a single Molly Manners Lesson; and (3) comparing two or more Civility Experts Lessons, collectively, to two or more Molly Manners' Lessons, collectively.

As to the first practice (comparing the copyrighted work to multiple other works, collectively), the Tenth Circuit has endorsed the possibility of copyright infringement in

this manner.  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 945 (10th Cir. 2002) (comparing plaintiff's one-volume work to defendants' five-volume work).  This makes intuitive sense.  An obvious ripoff of a copyrightable work could not avoid infringement simply by being broken up into a trilogy.  Thus, Civility Experts' practice of comparing one of its Lessons to a combination of Molly Manners Lessons faces no fundamental legal obstacle.

As to the second practice (comparing multiple copyrighted works, collectively, to a single work), Civility Experts offers no supporting authority, but some extra-circuit authority nonetheless exists.  *See Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 138 (2d Cir. 1998) (citing cases).  The allegedly infringing work in *Castle Rock* was a *Seinfeld* trivia book that had distilled fragments from 84 of the 86 individually copyrighted *Seinfeld* episodes that had aired before the book's publication. *Id.* at 135–36.  The Second Circuit acknowledged that the Copyright Act repeatedly speaks of infringing "the copyrighted work" (singular), *see* 17 U.S.C. § 106, but adhered to several other decisions treating multiple copyrighted works in the aggregate when comparing them to the defendant's alleged infringing work.  *Castle Rock*, 150 F.3d at 138.  In particular, the court saw *Seinfeld* as "a single work" because it was "a discrete, continuous television series."  *Id.*

The *Castle Rock* theory is somewhat concerning.  At a minimum, *Castle Rock* leaves unresolved the question of whether a defendant may invoke aggregation as well. Thus, if a defendant copied what might be considered a substantial portion of a single *Seinfeld* episode, could that defendant demand that his copying be compared to all

13

*Seinfeld* episodes in the aggregate?  If not, then the aggregation principle creates—with no obvious justification—a "heads I win, tails you lose" situation in favor of the copyright owner.  *See also* 4-13 *Nimmer on Copyright* § 13.03[A][3] (discussing other potential concerns with the *Castle Rock* approach).

In all events, the Court need not decide whether the *Castle Rock* theory applies here because Civility Experts' Lessons cannot be viewed as a discrete, continuous series in the same sense as a television series.  Accordingly, to the extent Civility Experts is attempting to establish an actionable comparison by comparing one Molly Manners Lesson to multiple Civility Experts Lessons, the Court has disregarded it.

As to the third practice (comparing multiple works, collectively, to multiple works, collectively), Civility Experts cites no authority—and the Court could find none—endorsing this sort of "corpus vs. corpus" theory of copyright infringement.  Absent such authority, or at least an intuitively workable principle (resolving, *e.g.*, what counts as the "corpus"), the Court will not explore whether multiple Molly Manners Lessons, taken together, infringe multiple Civility Experts Lessons, taken together.

## C.    Abstraction & Filtration

The Court now turns to the abstraction and filtration process as applied to Civility Experts' alleged similarities between its Lessons and Molly Manners' Lessons.[7]  The Court has read both Civility Experts' and Molly Manners' respective Lessons cover-to-cover (specifically, ECF Nos. 86-6 thru 86-35), and has evaluated every claim of similarity found in Civility Experts' Response (ECF No. 115 at 6–11) and in its initial

---

[7] The ensuing analysis does not explicitly differentiate between "abstraction" and "filtration."  As already explained, the difference is semantic.  (*See* n.6, *supra*.)

14

disclosures (ECF No. 86-36 at 8–23).

     1.    Business Model

Civility Experts argues that Molly Manners "nonliterally copied Civility Experts' model" because:

     a.    Civility Experts has long branded its materials with "MannersMatter" immediately followed by a geographic designation (*e.g.*, "MannersMatterUSA") and Molly Manners supposedly takes a similar approach with franchisee URLs ("MollyManners[City Name].com");

     b.    Molly Manners "[s]ells for almost identical price $3500.00";[8] and

     c.    Civility Experts has "[t]hree core kits" aimed at ages 3–7, 8–12, and 8–12 (again), respectively, and Molly Manners has three kits aimed at ages 3–6, 7–11, and 12–17, respectively.

(ECF No. 115 at 9.)

Civility Experts may not claim copyright protection over its "model" because it is, at most, an "idea, procedure, process, system, method of operation, [or] concept," to which copyright protection does not extend.  17 U.S.C. § 102(b).  Accordingly, these alleged similarities are not a valid basis for comparison.

     2.    Selection and Arrangement of Topics

As noted previously, "an original selection or arrangement" of facts or ideas is potentially protectable expression. *Feist*, 499 U.S. at 348.  Civility Experts asserts that

---

[8] Civility Experts does not specify what in particular Molly Manners offers for $3500.

Molly Manners' *Nice is Right* copied the selection and arrangement of topics in Civility Experts' *Macaroni and Please*, and that Molly Manners' *Kool to Be Kind* and *The Young Sophisticate* mimic the selection and arrangement of topics in Civility Experts' *Proud to Be Polite* and *Confidence is Cool*.  (*See* ECF No. 115 at 9–11.)  The Court will address these accusations in turn.

         a.     *Macaroni and Please vs. Nice is Right*

Civility Experts' *Macaroni and Please* is a collection of thirty manners lessons aimed at children ages 3–7, with each lesson designed to require no more than ten minutes of instructional time, followed (at the instructor's discretion) by up to fifty minutes of worksheets and other activities.  (ECF No. 86-6 at 2–4.)  The topics covered in the thirty lessons are, in the order presented:

1.     the concept of manners;

2.     the connection between good manners and showing respect for others and for yourself;

3.     politely introducing yourself to someone new, including using proper eye contact;

4.     proper handshake technique;

5.     the importance of smiling;

6.     the concept and importance of first impressions;

7.     review of all of the foregoing;

8.     self-respect, including concepts such as self-esteem and grooming;

9.     wearing proper clothing for the occasion;

10.    posture;

11.     table manners, with emphasis on being presentable, moderate when eating, cheerful, helpful, and not too noisy;

12.     setting the table properly;

13.     appropriate use of each utensil;

14.     helping adults at mealtime;

15.     table manners, with emphasis on not bringing distractions to the table (*e.g.*, toys), chewing quietly and with a closed mouth, not putting elbows on the table, and similar matters;

16.     review of the previous table manners lessons;

17.     the importance of following rules;

18.     showing kindness;

19.     behavioral expectations in varying social situations, such as the contrast between behaving at school and at a birthday party;

20.     showing politeness through nonverbal behavior, such as listening sincerely and waiting your turn;

21.     telephone etiquette;

22.     avoiding gossip, particularly whispering gossip;

23.     appropriate behavior at school;

24.     review of the previous twenty-three lessons, especially to ensure that the children understand new words they have learned;

25.     things not to say out loud, even if true, and learning to respect differences;

26.     responding to invitations;

27.     party etiquette (and, nominally, sleepover etiquette, although with no instructions specific to sleepovers—compare lesson 30);

28.     being a proper host;

29.     showing gratitude and appreciation, verbally and in writing (*e.g.*, thank you cards); and

      30.    sleepover etiquette.

(*Id.* at 5–95.)

Molly Manners' allegedly infringing lesson guide, *Nice is Right*, presents a series

of eight lessons aimed at ages 3–7.  (ECF No. 86-11 at 1–2.)  Molly Manners

recommends presenting these eight lessons in 30–45 minute class sessions over 6–8

weeks.  (ECF No. 86-27 at 12.)  The topics covered in the eight lessons are, in the

order presented, as follows:

1.    the concept of manners, with an overview of five attributes to be emphasized throughout the course (friendliness, helpfulness, kindness, respectfulness, and patience);

2.    friendliness, including—

    a.    behaviors friends exhibit toward one another;

    b.    "friendly introductions," including making eye contact and shaking hands (although with no instruction on handshake technique); and

    c.    the importance of smiling;

3.    helpfulness, particularly helping around the house, including—

    a.    setting the table properly;

    b.    cleaning up after dinner; and

    c.    picking up toys;

4.    kindness, including—

    a.    kind behaviors (*e.g.*, sharing, complementing others, being inclusive on the playground, etc.); and

    b.    unkind words and phrases to avoid;

5.    respectfulness, including—

    a.    using polite words (please, thank you, excuse me, etc.);

      b.      respecting personal space;

      c.      self-respect (*e.g.*, through healthy eating, proper grooming, etc.);

      d.      respect for books and toys; and

      e.      respect for the environment;

6.      patience, including—

      a.      waiting in line;

      b.      waiting for your turn to come;

      c.      delayed gratification; and

      d.      being a good sport;

7.      table manners, play date manners, and birthday party manners; and

8.      self-esteem and good sportsmanship.

(ECF No. 86-11 at 3 thru 86-14 at 8.)

In comparing the foregoing outlines, it is obvious that Molly Manners' *Nice is Right* overlaps with Civility Experts' *Macaroni and Please* on numerous subjects, *e.g.*, the concept of manners; proper introductions; the importance of smiling; helping at mealtime; setting the table properly; table manners; party manners; showing kindness; and self-respect/self-esteem.  As a matter of law, however, these cannot be an original *selection* of subjects.  *Feist*, 499 U.S. at 348.  Any workshop on manners and etiquette, especially one aimed at children, will likely cover these sorts of topics.  Thus, they are *scenes a faire*.[9]  *See, e.g.*, *DeBitetto v. Alpha Books*, 7 F. Supp. 2d 330, 334 (S.D.N.Y.

---

[9] Notably, Civility Experts entirely ignores Molly Manners' arguments regarding *scenes a faire*, as well as the arguments regarding merger, discussed in Part V.D, below.  (*See generally* ECF No. 115.)

1998) (applying *scenes a faire* doctrine in the context of competing dog-care books where both contained "undeniably similar" discussions of certain topics but "the inclusion and presentation of such facts naturally result[ed] from the choice of subject matter").

To the extent Civility Experts claims an original *arrangement* of subjects, *see Feist*, 499 U.S. at 348, the Court need not evaluate the argument because *Nice is Right* is not arranged in the same order as *Macaroni and Please*. Civility Experts implicitly concedes as much in its table comparing the two works, where it is forced to list *Nice is Right*'s various lessons out of order to make them line up with *Macaroni and Please*'s lesson order. (*See* ECF No. 115 at 10.) This Court has explicitly condemned such rearrangement as a means of attempting to prove substantial similarity. *See Feder v. Videotrip Corp.*, 697 F. Supp. 1165, 1171 (D. Colo. 1988).

Moreover, *Nice is Right* employs a perceptibly different approach to its arrangement as compared to *Macaroni and Please*. *Nice is Right* largely presents its lessons in terms of broad attributes the instructor wants the children to develop (kindness, patience, etc.), and then teaches specific manners or items of etiquette under the umbrella of each attribute. *Macaroni and Please*, on the other hand, takes a discrete situational approach (greetings and first impressions, table manners, party manners, etc.) and usually presents only one or two unique concepts or skills per lesson. *Cf. DeBitetto*, 7 F. Supp. 2d at 334 ("Notwithstanding the similar factual content, these sections are organized differently and convey information using a different tone and style.").

The only notable similarity in arrangement between *Macaroni and Please* and *Nice is Right* is in certain aspects of their earliest lessons: both begin with discussing the concept of manners, then quickly turn to the idea of proper introductions, and both offer sticker charts on which the students can track their good behavior.[10]  Notably, this is not a lock-step similarity—each lesson guide intersperses these concepts/activities among others.  Nor can the Court deem this sequence to be original expression.  It is common for workshops or seminars of any type to begin with a conceptual overview of the topic.  As for a manners workshops in particular, placing a lesson regarding proper introductions toward the beginning of the workshop is a natural place for such a lesson.  It is likewise natural to hand out a sticker chart at the beginning of a series of children's lessons.  It does not display the creativity necessary for copyright protection.[11]  *Cf.*

---

[10] Civility Experts would insert into this list its "Manners Detective" activity as compared to Molly Manners "Treasure Hunt for Good Manners" activity, both of which appear in each company's first lesson.  (*See* ECF No. 115 at 10.)  These two activities have essentially nothing in common.  "Manners Detective" is a worksheet listing ten behaviors and asking the student to place an X next to the behaviors he or she believes are polite.  (ECF No. 86-6 at 7.)  The "Treasure Hunt for Good Manners" involves searching the classroom for hidden slips of paper showing cartoon pirates and mermaids engaged in polite or helpful behaviors (*e.g.*, cleaning up toys, setting the table), and then discussing those behaviors as a group.  (ECF No. 86-11 at 5.)

[11] It is not clear whether Civility Experts claims copyright protection for its sticker chart or whether it highlights Molly Manners' sticker chart only to show ostensible similarity of selection and arrangement.  (*See* ECF No. 115 at 10.)  To the extent Civility Experts believes its sticker chart is protectable expression, the Court rejects that claim.  Sticker charts to encourage good behavior in children, are, at best, an unprotectable idea or procedure, 17 U.S.C. § 102(b), and in any event have been for many years in the public domain—or, perhaps more accurately, the private domain of innumerable homes as desperate parents have tried to encourage good behavior.  Moreover, there is little overlap between the actual behaviors encouraged by Civility Experts' sticker chart as compared to Molly Manners' sticker chart.  (*Compare* ECF No. 86-6 at 8 *with* ECF No. 86-11 at 12.)  To be sure, both charts are laid out as grids, with the particular behavior to practice named at the top of each column, but there are really only two ways to display a standard sticker chart, *i.e.*, with column headings or row headings.  The fact that Molly Manners also chose column headings is not an actionable similarity.  *Cf. Palmer v. Braun*, 155 F. Supp. 2d 1327, 1332 (M.D. Fla. 2001) (in the context of competing self-realization seminar materials, finding that both had similar personality profile forms, but finding nothing protectable

*Glass*, 2010 WL 4274581, at *5 (in evaluating competing books on handling the

personality differences between men an women, finding that the chapters on effective

listening mimicked each other in the arrangement of concepts, but also that "use of

these elements and the arrangement of these elements are, as a practical matter,

indispensible or standard in the treatment of this idea . . . and therefore not protected

by copyright").

In short, the alleged similarities in topical selection and arrangement between

*Macaroni and Please* and *Nice is Right* are not a valid basis for comparison.

      b.   *Proud to Be Polite/Confidence is Cool vs. Kool to Be Kind/The*
             *Young Sophisticate*

Civility Experts synthesizes the topics covered in its two lesson guides for older

children, *Confidence is Cool* and *Proud to Be Polite*, and compares that synthesized

version first to Molly Manners' *Kool to Be Kind*, and then to Molly Manners' *The Young*

*Sophisticate*.  (ECF No. 115 at 10–11.)  This necessarily dooms any claim to an original

arrangement of topics since Civility Experts has rearranged its own material to make

the current comparison.  The analysis below therefore focuses solely on selection of

topics.

*Confidence is Cool* is a set of lesson plans for a five-day "confidence camp,"

aimed at ages 8–12.  (ECF No. 86-7 at 1–4.)[12]  The topics covered for each of the five

days are, in the order presented:

---

because "anyone pursuing the idea of a personality profile would likely use a similar form to
elicit the same basic information"), *aff'd*, 287 F.3d 1325 (11th Cir. 2002).

    [12] Civility Experts claims that unspecified portions of *Confidence is Cool* "have been
used for ages up to 18+."  (ECF No. 115 at 11.)

1. Day 1—

   a. the concept of confidence,

   b. proper greetings and introductions, including proper handshakes,

   c. self-respect,

   d. a six-step process for gaining confidence,

   e. remaining calm in difficult situations, and

   f. overcoming shyness;

2. Day 2—

   a. first impressions,

   b. posture, gait, and other nonverbal communication,

   c. conflict resolution,

   d. personal grooming,

   e. appropriate clothing in various situations, and

   f. confident and appropriate verbal communication;

3. Day 3—

   a. the concept of situational etiquette,

   b. the importance of manners and etiquette to make society run smoothly,

   c. telephone etiquette,

   d. party etiquette,

   e. gratitude and appreciation, and

   f. an optional section on dating etiquette;

4. Day 4—

      a.     the concept of table manners,

      b.     setting the table,

      c.     proper use of utensils,

      d.     helpfulness in the kitchen and respect for the cook,

      e.     the art of conversation, and

      f.     buffet etiquette; and

5.     Day 5—

      a.     goal-setting, and

      b.     review of concepts learned in the previous days.

(ECF No. 86-7 at 7–81.)

Civility Experts markets *Proud to Be Polite* "as a prerequisite (or supplement) to the Confidence is Cool program," and it is likewise aimed at ages 8–12. (ECF No. 86-8 at 1, 2.) *Proud to Be Polite* presents nineteen lessons (*id.* at 3) and is more-or-less an abbreviated version of *Macaroni and Please*, adapted for older children. Each lesson is designed to require 10–15 minutes of instruction and can then be extended for up to an hour with optional activities. (*Id.* at 5.) The topics covered for each of the nineteen lessons are, in the order presented:

1.     the concept of manners, particularly as a way of showing respect;

2.     the concept of respect, and its connection to manners;

3.     self-respect;

4.     the importance of first impressions;

5.     the choreography of meeting new people (when to stand, when to approach, etc.);

24

6.     proper handshakes;

7.     eye contact;

8.     smiling and introduction protocol;

9.     remembering names;

10.    communicating with confidence;

11.    the art of conversation;

12.    nonverbal communication;

13.    listening skills;

14.    giving compliments;

15.    avoiding rude communication;

16.    telephone etiquette;

17.    online etiquette;

18.    review of all previous topics; and

19.    goal-setting.

(*Id.* at 12–60.)

Molly Manners' *Kool to Be Kind* is aimed at ages 7–11.  (ECF No. 86-15 at 1.)  It is broken into fourteen lessons, each apparently designed to cover one class period of unspecified length.  (*Id.* at 2.)  The topics covered for each of the fourteen lessons are, in the order presented:

1.     Lesson 1—

     a.     learning and remembering names,

     b.     saying please and thank you,

     c.     the "five steps to friendly introductions" (stand up, smile, make eye

contact, shake hands, introduce yourself in a friendly way),

d.    proper handshakes, and

e.    remembering names (again);

2.    Lesson 2—

a.    polite words and phrases, and

b.    rude words and phrases;

3.    Lesson 3—

a.    ways to help at home (including helping to set the table, although with no instruction on this task), and

b.    avoiding behaviors that display a bad attitude;

4.    Lesson 4—

a.    table setting;

5.    Lesson 5—

a.    table manners to encourage, and

b.    behaviors to avoid at the table;

6.    Lesson 6—

a.    restaurant etiquette, and

b.    proper use of utensils;

7.    Lesson 7—

a.    good personal habits and their relation to making good first impressions;

8.    Lesson 8—

a.    review of the five steps to friendly introductions,

b.    conversation skills,

  c.  conversation starters, and

  d.  giving and receiving compliments;

9.  Lesson 9—

  a.  good posture, and

  b.  becoming aware of body language;

10.  Lesson 10—

  a.  play date etiquette,

  b.  sleepover etiquette,

  c.  party etiquette,

  d.  responding appropriately to receiving gifts, and

  e.  writing thank you notes;

11.  Lesson 11—

  a.  good sportsmanship;

12.  Lesson 12—

  a.  promoting self-confidence and positive self-image;

13.  Lesson 13—

  a.  common courtesies (*e.g.*, opening doors for others),

  b.  when to remove your hat, and

  c.  movie theater etiquette; and

14.  Lesson 14—

  a.  review of all previous concepts.

(ECF No. 86-15 at 3 thru 86-23 at 5.)

  Molly Manners' *The Young Sophisticate* is aimed at ages 12–17.  (ECF No.

27

86-24 at 1.)  It is broken into nine lessons that can be taught over the course of five to seven one-hour sessions.  (*Id.* at 2.)  The topics covered for each of the nine lessons are, in the order presented:

1.      Lesson 1—

      a.      first impressions,

      b.      the effect of body language,

      c.      the five steps to friendly introductions (from *Kool to Be Kind*), and

      d.      remembering names;

2.      Lesson 2—

      a.      opening doors for others,

      b.      elevator etiquette,

      c.      public transportation etiquette, and

      d.      when to remove your hat;

3.      Lesson 3—

      a.      the art of conversation,

      b.      conversation starters, and

      c.      giving and receiving compliments;

4.      Lesson 4—

      a.      cell phone etiquette,

      b.      online etiquette, and

      c.      avoiding conversation about most money matters;

5.      Lesson 5—

      a.      thank you notes;

6.      Lesson 6—

    a.      good personal habits;

7.      Lesson 7—

    a.      table setting (in the context of understanding the purpose for the various dishes and utensils usually set out at a restaurant),

    b.      calculating a tip, and

    c.      table manners;

8.      Lesson 8—

    a.      body language; and

9.      Lesson 9—

    a.      job interviews.

(ECF No. 86-24 at 3 thru 86-26 at 3.)

Obviously, Molly Manners' *Kool to Be Kind* and *The Young Sophisticate* cover many topics also covered in Civility Experts' *Proud to Be Polite* and *Confidence is Cool*. But again, all of these topics are *scenes a faire* in manners and etiquette training. Thus, the fact that Molly Manners' lesson guides contain the same selection of topics, among others, is not an appropriate element in the substantial similarity test.

    3.      <u>Miscellaneous Other Features</u>

Civility Experts' various lists of comparisons include a smattering of allegedly unique items from its own Lessons that are supposedly also found in Molly Manners' Lessons.  The Court addresses those comparisons here.

    a.      *Hot Potato*

Civility Experts' *Macaroni and Please*, lesson 11, introduces the idea of table

29

manners.  (*See* ECF No. 86-6 at 36–38.)  For amusement, the lesson gives the children a tongue twister about passing the potatoes at dinner time.  (*Id.* at 38.)  The lesson also suggests playing hot potato with the children—apparently not to reinforce any particular concept, but because the tongue twister involves potatoes and because children like to play games.  (*Id.* at 37.)

Molly Manners' *Kool to Be Kind*, lesson 1, teaches "the five steps to friendly introductions," among other things.  (ECF No. 86-15 at 5.)  As a means of reinforcing the five steps, Molly Manners suggests a variant on hot potato.  Instead of eliminating the person holding the potato when the music stops, that person must instead recite the five steps.  (*Id.* at 7.)

Civility Experts asserts that "Molly Manners copied Civility Experts' materials of playing 'hot potato' in teaching children introductions."  (ECF No. 115 at 9.)  This claim is without merit.  Hot potato has existed for generations, and suggesting that a teacher should play it with students is far from original.  Moreover, the use of hot potato within *Kool to Be Kind* (reinforcing the five steps to friendly introductions) is significantly different than its use in *Macaroni and Please* (amusement after a lesson about table manners).  It provides no valid basis for comparison.

> b.    *Golden Fork Award*

Civility Experts' *Macaroni and Please*, lesson 13, covers proper use of utensils. (ECF No. 86-6 at 43–44.)  It suggests that the instructor could "[h]ave a contest where the prize is 'The Golden Fork' award.  Ask parents to help by completing a chart or signing a note if a child uses utensils for 10 meals in a row."  (*Id.* at 44.)

Molly Manners' *Kool to Be Kind*, lesson 14, suggests that the teacher put on a special meal where students can practice their dining etiquette.  (ECF No. 86-23 at 4–5.)  At the close of the meal, the teacher is instructed to present the students with "Golden Fork Award" certificates showing that they have "demonstrat[ed] excellent table manners."  (*Id.* at 5.)

Civility Experts argues that Molly Manners' version of the Golden Fork Award is "[v]erbatim" copying of Civility Experts' version, with the "[s]ame name, concept, approach, and application."  (ECF No. 86-36 at 10.)  Molly Manners counters with a Bing Images search for "golden fork award," which displays numerous hits.  (ECF No. 86-39.)  Molly Manners therefore argues that the concept of a golden fork award "fall[s] squarely within the public domain."  (ECF No. 85 at 18.)

The issue is not as straightforward as Molly Manners portrays it.  The relevant images Molly Manners found on the Internet relate exclusively to best restaurant awards.  Thus, the concept of an award called the "golden fork award" is certainly within the public domain, as is applying that concept to a best restaurant competition.  However, adapting the golden fork concept to encourage good table manners (as Civility Experts has) does not appear to be in the public domain.

This raises an interesting example of the sometimes-hazy line between protected original expression and nonprotectable ideas or concepts.  Is Civility Experts' adaptation of the golden fork award just another nonprotectable concept—the *idea* of awarding good table manners with an award known as the Golden Fork Award?  Or is it a mark of original expression—the nonprotectable idea of awarding good table manners, but *expressed* through an allegedly original adaptation of the golden fork

concept?[13]

Ultimately, declaring Civility Experts' Golden Fork Award to be protectable expression would create rights similar to that of a trademark or service mark—anyone else could award students for using good table manners (because the bare idea cannot be copyrighted) but only Civility Experts could name that award the "Golden Fork Award." That is not the purpose of copyright law. *See, e.g.*, *Warner Bros. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 760 (S.D.N.Y. 1988) (distinguishing trademark and copyright). The Court therefore finds that the Golden Fork Award is not protectable expression.

c.      *Etiquette Everywhere vs. Everyday Etiquette*

Day 3 of the confidence camp outlined in Civility Experts' *Confidence is Cool* begins with a discussion of "etiquette everywhere." (ECF No. 86-7 at 40–41.) "Etiquette everywhere" is shorthand for the idea that social expectations change in varying situations. (*Id.* at 41–42, 45.) It also encourages students to practice certain common courtesies in public (opening doors for others, offering a seat to an elderly individual, etc.), and to avoid common rude or disrespectful behaviors. (*Id.* at 46–49.)

Molly Manners's *Kool to Be Kind*, lesson 13, focuses on "everyday etiquette," meaning "common courtesies that children may encounter on a daily basis." (ECF No. 86-22 at 5.) These include, among various other things, opening doors for others and offering a seat to an elderly individual.

---

[13] One could argue, although Molly Manners has not, that Civility Experts only uses the Golden Fork Award to encourage proper use of utensils, and not, like Molly Manners, to reward good table manners generally. Assuming Civility Experts can have any copyright protection in the Golden Fork Award, the Court does not see this as a material distinction.

Civility Experts cannot copyright the concept of situational etiquette or showing common courtesies.  Thus, it is immaterial that *Confidence is Cool* and *Kool to Be Kind* both address this topic.  It is also immaterial that both lessons focus on common courtesies (a *scene a faire* in light of the overall subject matter) or that they overlap on specific recommended courtesies (*scenes a faire* in any discussion of common social courtesies).  Moreover, Civility Experts' treatment of "etiquette everywhere" is meaningfully different than Molly Manners' treatment of "everyday etiquette."  Civility Experts' materials cover a wide range of public and private social situations and person-to-person interactions, with little or no specified discussion as to any particular situation or interaction.  The advice to give up a seat to the elderly, for example, appears as part of a true-or-false worksheet.  (*See* ECF No. 86-7 at 49.)  In contrast, Molly Manners' materials focus almost exclusively on common courtesies in public and contain substantial recommended discussion.  *Cf. DeBitetto*, 7 F. Supp. 2d at 334 ("Notwithstanding the similar factual content, these sections are organized differently and convey information using a different tone and style.").

For all these reasons, "etiquette everywhere" vs. "everyday etiquette" is not a valid basis for comparison in the substantial similarity analysis.

> d.     *End-of-Day Review vs. Manners Minutes*

Civility Experts' *Confidence is Cool* suggests ending certain camp days with an opportunity to discuss and reflect on what has been taught that day.  (*See* ECF No. 86-7 at 19, 58, 76.)  Civility Experts says that Molly Manners copied this idea and renamed it "Manners Minutes."  (ECF No. 115 at 11.)  But Civility Experts cannot plausibly claim

that the idea of end-of-day review is protectable expression.  Moreover, "Manners

Minutes" is actually a suggestion for the instructor to e-mail students' parents regarding

"what manners and activities were discussed that week," so that parents can reinforce

what their children are learning.  (ECF No. 86-27 at 15.)  There is no basis to compare it

to *Confidence is Cool*'s end-of-day review.

> e.     *The Art of Conversation*

Civility Experts' *Confidence is Cool* and *Proud to Be Polite* both contain sections

titled "The Art of Conversation."  (ECF No. 86-7 at 66; ECF No. 86-8 at 40.)  Molly

Manners' *The Young Sophisticate* contains an identically titled section.  (ECF No. 86-24

at 7.)  This is conceivably relevant to Civility Experts' claim for breach of the Settlement

Agreement's provision forbidding Molly Manners from using Civility Experts' "verbatim

lesson names."  (ECF No. 86-10 ¶ 1.)  That matter is not currently before the Court.  As

to protectable expression under the copyright laws, Civility Experts can claim none.

"The art of conversation" is a stock phrase, and therefore falls under the *scenes a faire*

doctrine.

> f.     *Word Searches*

Civility Experts accuses Molly Manners of infringement because their respective

Lessons contain word search worksheets.  (*See* ECF No. 86-36 at 10.)  Word searches

are *scenes a faire* in children's instructional materials.  Civility Experts can claim no

protectable expression on this point.

> g.     *Polite Posse vs. Polite Pals*

*Macaroni and Please*, lesson 1, encourages the instructor to assign a few

children each day to be the "Polite Posse."  (ECF No. 86-6 at 6.)  These children help enforce a particular rule of the day.  (*Id.*)  Civility Experts compares this to Molly Manners' *Nice is Right*, lesson 1, which introduces the "Polite Pals."  (ECF No. 86-11 at 6–7.)  The Polite Pals are five fictional cartoon characters who represent the attributes emphasized in *Nice is Right* ("Friendly Freddy," "Helpful Heidi," etc.).  They are simply teaching tools (and the subject of many coloring pages).  They have no enforcement role, nor is any class participant asked to pretend to be a Polite Pal.  There is no appropriate comparison between the Polite Posse and the Polite Pals.

> h.    *Table Monsters vs. Merry Monsters*

Civility Experts' *Macaroni and Please* introduces children to "the Table Monsters," who demonstrate poor manners at the dinner table (*e.g.*, "Slobbergobblerex").  (ECF No. 86-6 at 36–38.)  There are no pictures of the Table Monsters; they are described only.

Molly Manners' *Kool to Be Kind*, in a lesson regarding general respectful behaviors (not table manners), introduces children to "the Merry Monsters," who are cartoon figures depicted on a worksheet with empty speech bubbles above or to the side of them.  (ECF No. 86-16 at 5.)  Says Molly Manners, "These monsters aren't scary, they're merry!  Using polite words makes them happy!  Write in polite words and phrases in the merry monsters' speech bubbles."  (*Id.*)

Civility Experts says that the "idea" for the Merry Monsters was "taken" from the Table Monsters.  (ECF No. 86-36 at 10, 12.)  Even if this were ultimately true, it would provide no valid basis for comparison of protectable expression.  Civility Experts cannot

copyright an idea.  In addition, monsters are *scenes a faire* in children's instructional

materials, and particularly in lessons regarding manners.  (*See* ECF No. 86-37 (Bing

Images search).)  In any event, the Merry Monsters and the Table Monsters have

essentially no resemblance beyond the fact that both are labeled as monsters.

        i.    *Manners Superheroes*

Civility Experts' *Macaroni and Please*, lesson 23, discusses manners at school.

(ECF No. 86-6 at 72–74.)  One suggested activity is to

> [a]sk children to be "Manners Superheroes."  Ask them to
> create a character for themselves, complete with costumes
> and special powers (remind them they are fighting bad
> manners at school or bringing good manners to school)[.]
> Give them a day or two to plan something and let them each
> do show and tell and describe their superhero to the class.

(*Id.* at 73.)

Molly Manners' *Nice is Right*, lesson 3, discusses many forms of helpfulness.

(ECF No. 86-12 at 3–10.)  One portion of this lesson is entitled "Manners Superheroes!"

and instructs as follows:

> Get a class set of "Superhero" props such as inexpensive
> capes and Lone Ranger-style eye masks at a party store or
> Dollar Store.  Have students dress up as "Manners
> Superheroes"!  Say to the class, "What does a superhero
> do?  Yes, a superhero helps other people.  Can you name
> your favorite super hero?  Well, today we are going to be
> Manners Superheroes!"  Put students in groups of two.  Give
> each pair a scenario and have them discuss and act out for
> the class what they would do.  Give students a few minutes
> to talk in their groups and then have them present or
> role-play their solutions to the class.

(*Id.* at 7.)  The lesson then poses various "What should you do?" scenarios (*e.g.*, "You

are at home when your mother comes in the door from the grocery store with lots of

bags still in the car.  What should you do?").

Civility Experts says that Manners Superheroes is "signature and unique" to itself.  (ECF No. 86-36 at 17.)  Like monsters, however, superheroes are *scenes a faire* in children's instructional literature, and particularly when trying to encourage good manners.  (*See* ECF No. 86-38 (Bing Images search).)  Perhaps Civility Experts' particular implementation of the superhero trope is unique.  But even assuming as much, and further assuming that it is protectable expression (which is fairly debatable), Molly Manners' has copied only two constituent parts: the name, and the idea of having the children dress up as a superheroes.  Neither is protectable expression.

j.      *Sloppy Sue vs. Messy Mandy/Manny*

Civility Experts' *Macaroni and Please*, lesson 6, discusses first impressions and the importance of a neat appearance.  (ECF No. 86-6 at 21–22.)  At one point, it suggests that the instructor "could sneak out just before this lesson and put on a 'Sloppy Sue' costume ([o]ld clothes, messy hair, dirty face)[.]  Then the instructor can come into the room and watch the children's reaction as a lead into the lesson."  (*Id.* at 22.)

Molly Manners' *Kool to Be Kind*, lesson 7, also discusses first impressions and the importance of a neat appearance.  (ECF No. 86-19 at 1–2.)  It asks the instructor to distribute a worksheet on which the students can draw "Neat Nelly," "Neat Ned," "Messy Mandy," and "Messy Manny."  (*Id.* at 2–3.)  The point of the exercise is to draw the messy characters with unkempt appearance and the neat characters with a more polished appearance.  (*Id.* at 2.)

Civility Experts claims that Messy Mandy/Manny is a rip off of Sloppy Sue.  (ECF No. 86-36 at 14.)  The Court, however, finds no valid basis for comparison.  Sloppy Sue and Messy Mandy/Manny take very different approaches to the idea of demonstrating a poor appearance.  Moreover, Civility Experts cannot claim any protectable expression in alliterative two-word names, which are at least *scenes a faire* in children's instructional materials, if not entirely unoriginal.

**D.     Remaining Alleged Similarities & Substantial Similarity Analysis**

The Court finally turns to Civility Experts' claims of literal or near-literal copying in Molly Manners' materials.  As explained below, the Court finds that some of the alleged similarities indeed raise a proper basis for comparison under the substantial similarity test.  Rather than designating the appropriately comparable material in this section and then analyzing substantial similarity in a separate section, the Court will analyze abstraction and filtration for each of Civility Experts Lesson in separate subsections below, and then analyze substantial similarity at the end of each subsection.  Before undertaking that analysis, however, the Court notes two important considerations:

First, the substantial similarity inquiry asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value."  *Jacobsen*, 287 F.3d at 943 (internal quotation marks omitted).  "This is primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis."  *Id.* (internal quotation marks omitted).

Second, although quality matters more than quantity, the two concepts are

linked.  A small quantity of copying, even verbatim, is often not actionable without a strong showing of quality—substance and value—within the copied lines.  *Cf. Heim v. Universal Pictures Co.*, 154 F.2d 480, 487 n.8 (2d Cir. 1946) (suggesting that copying a single line from *Jabberwocky* or *Euclid Alone Has Looked on Beauty Bare* could be actionable).  Where such a showing cannot be made, the copying is deemed *de minimis*, *i.e.*, not *substantially* similar.  *See Feder*, 697 F. Supp. at 1176.

   1.   <u>*Macaroni and Please*</u>

   Civility Experts claims that the following portions of *Nice is Right* and *Kool to Be Kind* were lifted from *Macaroni and Please*:

| ***Macaroni and Please* (Civility Experts)** | ***Nice is Right* (Molly Manners)** |
|---|---|
| Lesson 3, regarding meeting new people, advises as follows: "Instructor starts by asking, 'What do you do when you meet someone new?  Do you.... (ask silly questions such as, "Make a funny face and run away?", "Throw a sandwich at them and laugh?"[,] ["S]ay they're stupid and then ignore them?", "[Q]uack like a duck?"[)] Well then what should you do?'" (ECF No. 86-6 at 12.) | Lesson 2, regarding meeting new people, advises as follows: "Say to students, '[W]hat are you supposed to do when you meet someone new?  Should you stick out your tongue and run away?  Of course not!  How would that make that new person feel?'" (ECF No. 86-11 at 13.) |

   Civility Experts cannot copyright the idea of teaching proper greetings through counterexamples.  However, the means of teaching this subject by way of counterexamples are not so limited or standardized that the merger or *scenes a faire* doctrines would leave *Macaroni and Please*'s language unprotectable.  Comparing these two passages in the substantial similarity analysis is appropriate.

* * *

| *Macaroni and Please* (Civility Experts) | *Nice is Right* (Molly Manners) |
|---|---|
| Lesson 12, regarding table setting, offers the following sentence to help children remember where to place utensils: "Mr. Fork LEFT (the fork is on the left of the plate) his knife and spoon RIGHT (the knife and spoon go on the right side of the plate) beside the plate."  (ECF No. 86-6 at 39.) | Lesson 3, regarding table setting, uses a paragraph-long memory device, specifically, a story about "Princess Spoonella," "Prince Fork," the "Knife Guard," and other elements.  Part of the story states: "Prince Forks [*sic*] was LEFT (left of the plate) all alone ON Napkin Island."  (ECF No. 86-12 at 4.) |

Civility Experts cannot copyright the concept of a table-setting memory device cast in the form of a story.  The only resemblances between the two stories is that they both play on the word "left."   But that is "dictated by external factors," *Gates Rubber*, 9 F.3d at 838, namely, the customary expectation that the fork be placed left of the dinner plate.  This presents no valid basis for comparison.

* * *

| *Macaroni and Please* (Civility Experts) | *Kool to Be Kind* (Molly Manners) |
|---|---|
| Lesson 4, regarding handshakes, asks the instructor to demonstrate (as examples of improper technique) "a bone crushing shake, a spaghetti shake, etc."  It later offers the following instructional idea: "It might be fun to use food or other items to illustrate types of handshakes and how they feel to others in a more tactile, memorable way.  For example, blindfold the children and let them put their hand into a bowl of cold wet cooked spaghetti, a bag of light, flimsy feathers and/or on a big, heavy rock or block." (ECF No. 86-6 at 15, 16.) | In a portion of lesson 1 regarding proper handshakes, the following are presented as examples of bad technique: "FEATHER HANDSHAKE: What does a feather feel like to you?  Yes, feathers are light and flimsy.  [It is a good idea to bring in a feather or two to have students feel and describe here.] . . . . [¶] HAMMER HANDSHAKE: What does a hammer do?  Yes, a hammer is hard, cold, and it pounds things.  [Maybe bring in a hammer to have students feel and describe.] . . . ."  (ECF No. 86-15 at 6.) |

Advice against too-weak or too-firm handshakes, including comparing such handshakes to objects such as hammers, noodles, and feathers, are *scenes a faire* in

any instruction regarding handshakes.  Civility Experts cannot copyright the idea of making these points more memorable through tactile reinforcement.  The merger doctrine prevents Civility Experts from claiming copyright over describing feathers as "light" and "flimsy."  These passages therefore present no valid basis for comparison.

* * *

| *Macaroni and Please* (Civility Experts) | *Kool to Be Kind* (Molly Manners) |
|---|---|
| Lesson 14, regarding helping at mealtime, contains a take-home worksheet where students can "[c]heck off which of the following ways you helped in the kitchen in the last week." Among the eighteen options are (in the order presented) "set the table," "helped cook," "put the dishes away," "put the groceries away," "washed vegetables," and "swept the floor."  (ECF No. 86-6 at 48.) | Lesson 3, regarding helping at home, presents eleven headings for the instructor to emphasize, each followed by a short explanation; some of the headings are as follows (in order): "put dishes away," "sweep the floor," "help carry and put groceries away," "help set the table," and "help cook" (with a specific suggestion of "washing vegetables").  (ECF No. 86-16 at 7 thru 86-17 at 1 (capitalization normalized).) |
| Lesson 27, regarding party etiquette, provide nine tips, including: "Be on time and don't stay late if everyone else has gone home," "Take a gift," "Don't take along someone who was not invited," and "Say thank you and something nice to the hostess before you leave."  (ECF No. 86-6 at 85.) | A portion of lesson 10 regarding party etiquette presents eight headings for the instructor to emphasize, each followed by a short explanation; some of the headings are as follows: "take a gift," "don't take someone who wasn't invited," "be on time and don't stay late if everyone has gone home," and "thank the adult in charge when you leave, say good-bye and happy birthday to your friend."  (ECF No. 86-20 at 6–7 (capitalization normalized).) |

| ***Macaroni and Please*** (Civility Experts) | ***Kool to Be Kind*** (Molly Manners) |
|---|---|
| Lesson 30, regarding sleepover etiquette, offers a list of eight polite behaviors, including "Go to bed when you are supposed to," "Don't jump on the bed," "Don't snoop around," and "Don't sleep in too long."  (ECF No. 86-6 at 92.) | A portion of lesson 10 regarding sleepover etiquette presents seven headings for the instructor to emphasize, each followed by a short explanation; some of the headings are as follows: "go to bed when you are supposed to," "don't jump on the bed," "no snooping: this is an important one," and "don't sleep in too long."  (ECF No. 86-20 at 5 (capitalization normalized).) |

These three examples comprise lists of encouraged or discouraged behavior. None of Civility Experts' lists displays an original selection or arrangement of topics.  *Cf. DeBitetto*, 7 F. Supp. 2d at 335 (no copyright protection for "the sort of list likely to be found in any book" on the relevant topic).  In no case did Molly Manners copy the entirety of any allegedly equivalent list.  The merger doctrine prevents Civility Experts from claiming copyright protection for the literal wording of the various list items.  There are very few ways to say "put dishes away," "take a gift," "don't jump on the bed," and so forth, particularly when these phrases are meant to be spoken to young children.

\* \* \*

Turning now to the substantial similarity analysis for *Macaroni and Please*, the question is whether the "What do you do when you meet someone new?" passages above demonstrate substantial similarity.  The answer is no—no reasonable jury could conclude that this small portion of *Macaroni and Please* is sufficiently important to the work as a whole to merit copyright protection.  *See* 4-13 *Nimmer on Copyright* § 13.03[A][2][a] text accompanying n.114.1 ("it is most unusual for infringement to be found on the basis of similarity of a single line, and generally, the likelihood of copying

42

but a single line of such importance, as to warrant a finding of substantial similarity, is

remote").  Molly Manners therefore has not infringed *Macaroni and Please*.

     2.    *Confidence is Cool*

Civility Experts claims that the following portions of *Nice is Right* and *Kool to Be*

*Kind* were lifted from *Confidence is Cool*:

| ***Confidence is Cool* (Civility Experts)** | ***Nice is Right* (Molly Manners)** |
|---|---|
| A portion of the day 1 outline regarding self-respect lists the following ways "to be polite to yourself": <br>"1.  Take care of my stuff <br>"2.  Wash my hair <br>"3.  Dress nicely <br>"4.  Eat properly <br>"5.  Get some sleep <br>"6.  Exercise[.]" <br>(ECF No. 86-7 and 12.) | A portion of lesson 5 regarding respect contains a coloring page titled "The Polite Pals respect themselves by taking good care of their bodies," and features the Polite Pals depicted in behaviors reflecting the following labels: "Brush teeth," "Wash hands," "Eat fruits and veggies," "Exercise is fun!", and "A good night's sleep."  (ECF No. 86-13 at 3.) |

Civility Experts' list does not display an original selection or arrangement of

topics.  Moreover, Molly Manners' version does not completely duplicate Civility Experts'

list either in content, arrangement, or even grammatical structure (Civility Experts' list

entirely comprises imperatives, Molly Manners' list does not).  The fact that Molly

Manners' version could be considered a paraphrase of Civility Experts' list is immaterial

under the merger doctrine.  There are only so many ways to express these concepts in

a manner easily understood by children.  *See also Francorp, Inc. v. Siebert*, 210 F.

Supp. 2d 961, 966 (N.D. Ill. 2001) (in the context of lists within certain copyrighted

materials, denying copyright protection because "[t]he lists are organized differently,

and the explanations are only similar to the extent they express the same concept").

These passages present no valid basis for comparison.

* * *

| ***Confidence is Cool* (Civility Experts)** | ***Kool to Be Kind* (Molly Manners)** |
|---|---|
| A portion of the day 2 outline regarding effective nonverbal communication lists fifteen behaviors and asks the instructor to discuss with the students the message each behavior conveys.  Two of the behaviors are "arms folded "(message: "rigid, disinterested"; alternative behavior: "arms at side") and "fingers tapping" (message: "inpatient, nervous"; alternative behavior: "hold hands still"). (ECF No. 86-7 at 32.) | A portion of lesson 9 regarding positive body language presents six behaviors and asks the instructor to discuss with the students the message each behavior conveys.  Two of the behaviors are "standing with arms folded" (which conveys the message, "I am bored and uninterested," and should be replaced with "arms at your side or hands together") and "foot or finger tapping" ("usually a sign of boredom or impatience"; instead "try to keep your hands and feet relaxed").  (ECF No. 86-20 at 3.) |

Folded arms and tapping fingers are *scenes a faire* in body language training. The words used to convey these concepts are limited and therefore unprotectable under the merger doctrine.

* * *

With no valid comparisons between Molly Manners' Lessons and Civility Experts' *Confidence is Cool*, the Court finds that Molly Manners has not infringed *Confidence is Cool*.

3.    <u>Proud to Be Polite</u>

Civility Experts claims that the following portions of *Nice is Right*, *Kool to Be Kind*, and *The Young Sophisticate* were lifted from *Proud to Be Polite*:

| ***Proud to Be Polite*** **(Civility Experts)** | ***Nice is Right*** **(Molly Manners)** |
|---|---|
| Lesson 1.3 contains a worksheet that asks students to list of ways "to be polite to yourself," with the following suggested answers:<br>"1.  Only say positive things about myself<br>"2.  Stand up for myself and what I believe in<br>"3.  Don't expect myself to do everything perfectly<br>"4.  Think about all the things I can do well<br>"5.  Focus on my strengths and work towards improving my weaknesses<br>"6.  Surround myself with happy positive people[.]"  (ECF No. 86-8 at 19.) | A portion of lesson 8, regarding self-confidence and good sportsmanship, presents the following list of "ways that we can be polite to ourselves":<br>"Only say positive things about myself[.]<br>"Stand up for myself.<br>"Allow myself to make some mistakes. Nobody is perfect and we shouldn't try to be perfect.<br>"Think about all the things I can do well.<br>"Don't compare myself to others.<br>"Look for friends and activities that make you feel good about yourself.  Surround yourself with happy people!<br>"Accept myself the way that I am.  I am special!"  (ECF No. 86-14 at 3.) |

Molly Manners includes very similar sections in *Kool to Be Kind* and *The Young Sophisticate*, sometimes with even closer word-choice parallels, such as "Stand up for myself and what I believe in" rather than just "Stand up for myself."  (*See* ECF No. 86-21 at 9 thru 86-22 at 1; ECF No. 86-25 at 6.)

The Court finds that Civility Experts' selection of advice is unprotected under the *scenes a faire* doctrine.  However, its arrangement shows at least a minimal amount of creativity, and the words needed to express these bits of advice are not so limited that the merger doctrine excuses verbatim copying.  Comparing these two passages in the substantial similarity analysis is appropriate.

* * *

45

| Proud to Be Polite (Civility Experts) | Kool to Be Kind (Molly Manners) |
|---|---|
| Lesson 1.2, regarding the concept of respect, begins as follows: "Respect means many specific things to many different people but generally it means showing care and consideration for others.  Having good manners overall shows that you respect other people.  And in most cases, having an overall attitude of respect towards others will mean that other people will forgive you or give you the benefit of the doubt, on occasions when you maybe do or say the wrong thing. [¶] We worry about our manners and how we treat others because how we treat people often determines how others will treat us." (ECF No. 86-8 at 15.) | Lesson 7, regarding good personal habits and positive first impressions, begins as follows: "For this class topic, review with students what respect is: showing care and consideration for others, things, and yourself.  Showing respect for ourselves, shows others how they should treat us." (ECF No. 86-19 at 1.) |

Civility Experts claims that defining *respect* as "showing care and consideration for others" is something it invented in 1999.  (ECF No. 86-36 at 12.)  But Civility Experts asserts this as a proper definition, not a creative or fanciful definition.  The range of words available to define *respect* in this sense is limited, and tends to cluster around ideas such as care and consideration.  *See, e.g.*, Merriam-Webster Online, s.v. "respect" (defining respect as, among other things, "a feeling or understanding that someone or something is important, serious, etc., and should be treated in an appropriate way" and "an act of giving particular attention: CONSIDERATION"), *at* http://www.merriam-webster.com/dictionary/respect (last accessed Feb. 23, 2016).  Under the merger doctrine, then, the parties' respective definitions of *respect* are not an appropriate basis for comparison.  The same is true for the final sentence of each of these passages.  The concept is not subject to copyright and the words available to

express it are limited.

* * *

| *Proud to Be Polite* (Civility Experts) | *Kool to Be Kind* (Molly Manners) |
|---|---|
| Lesson 1.3, regarding self-respect, lists nine "behaviors that show poor attitude," including (in order): "eye rolling," "slouching," "swearing," "exasperated sighs," "saying mean things," "complaining," and "whining."  (ECF No. 86-8 at 17.) | A portion of lesson 3 titled "Bad Attitude Bingo" presents fourteen headings for the instructor to emphasize, each followed by a short explanation; some of the headings are (in order): "using bad words," "slouching," "whining," "complaining," "eye rolling," "big sighs," and "saying mean things."  (ECF No. 86-17 at 1–2.) |
| Lesson 1.3 also contains a worksheet that presents a list of nine potential habits and asks the students to put a star next to the habits that show self-respect.  The correct answers are (in the order listed on the worksheet) "brush your teeth," "dressing neat and clean," "good posture," "cleaning your fingernails," "taking a bath," and "washing your hair." (ECF No. 86-8 at 19.) | A portion of lesson 7 regarding good habits presents the following headings for the instructor to emphasize, each followed by a short explanation: "brush your teeth as [*sic*] least twice a day," "shower or take a bath daily," "brush your hair and keep fingernails neat and clean," "make your bed," "wear clean clothes," "get enough sleep," "eat well," "don't spend too much time in front of the screen," "exercise and get outside to play!", "take care of your things," and "recycle."  (ECF No. 86-19 at 1–2 (capitalization normalized).) |

These two alleged similarities comprise lists of encouraged or discouraged behaviors.  Neither of Civility Experts' lists displays an original selection or arrangement of topics.  In no case did Molly Manners copy the entirety of any allegedly equivalent list.  The merger doctrine prevents Civility Experts from claiming copyright protection for the literal wording of the various list items.  There are very few ways to say "whining," "brush your teeth," "saying mean things," and so forth, particularly when children are the intended audience.

47

* * *

| ***Proud to Be Polite*** (Civility Experts) | ***Kool to Be Kind*** (Molly Manners) |
|---|---|
| In a series of lessons regarding proper introductions, Lesson 2.2 is titled "Rise to the Occasion" and counsels, among other things, "to try to remove any physical barriers between you and the person you are meeting."  (ECF No. 86-8 at 24.) | In a portion of a lesson titled "The Five Steps to Friendly Introductions," step one is "Stand Up!" and begins, "Rise to the occasion!  You should always stand when meeting someone for the first time and eliminate any physical barriers between you and the person (table, desk, etc.)."  (ECF No. 86-15 at 5.) |

This is a slightly more complicated example.  Given that physical barriers tend to thwart introductions before they even begin, the Court cannot say that removing physical barriers is a typical bit of advice for handling an introduction in-process.  Moreover, Molly Manners' version suggests slavish copying and misapplication, conjuring up the comical image of a child shoving aside a table or desk simply to make a better introduction—which is not likely what Civility Experts had in mind.

Nonetheless, even if removing physical barriers is a bit of advice unique to Civility Experts, Civility Experts cannot copyright it because it is a process, system, or discovery.  *See Warrick*, 717 F.3d at 1117–19 & n.7; *Palmer*, 155 F. Supp. 2d at 1333–34.  As for the particular words used to express it, the range is limited, and therefore subject to merger.  *See* 4-13 *Nimmer on Copyright* § 13.03[B][3] nn. 167.5–168 and accompanying text ("Particularly in the case of functional works, it may be necessary to embody near, or even word-for-word, identity [before infringement may be considered].").  "Rise to the occasion," moreover, is a stock phrase.  None of these elements presents a valid basis for comparison.

* * *

| *Proud to Be Polite* (Civility Experts) | *Kool to Be Kind* (Molly Manners) |
|---|---|
| In the same series of lessons regarding proper introductions, Lesson 2.3 covers handshakes and advises, "A firm handshake tells others that you are confident, and extending a handshake gesture is a way of saying 'I think you are important' and 'I am going to meet you and make you feel welcome'."  (ECF No. 86-8 at 26.) | Step four of "The Five Steps to Friendly Introductions" is "Shake Hands" and begins, "Putting our hand out and shaking hands with someone is a way of saying 'I am going to make an effort to meet you and make you feel welcome.'" (ECF No. 86-15 at 5.) |
| In the same series of lessons, Lesson 2.4 emphasizes eye contact, explaining, "Eye contact tells the other person you are listening and makes him or her feel important.  You appear to be a better listener and look more confident and in control."  (ECF No. 86-8 at 29.) | Step three of "The Five Steps to Friendly Introductions" is "Make Eye Contact" and instructs, "It is very important to look the person in the eye when you meet them for the first time.  This tells the other person that you are listening and makes him or her feel important.  You appear to be a better listener and look confident." (ECF No. 86-15 at 5.) |

The concepts expressed here cannot be copyrighted, but the words needed to express these concepts are not so limited such that merger excuses verbatim or near-verbatim copying.  Comparing these passages in the substantial similarity analysis is appropriate.

* * *

| *Proud to Be Polite* (Civility Experts) | *Kool to Be Kind* (Molly Manners) |
|---|---|
| In the same lesson regarding handshakes, the proper technique is described as follows:  "Extend your hand vertically with your thumb up.  Meet the other person's hand 'web to web.' 'Pump' once or twice from the elbow. Release your hand after the shake, even if the introduction continues.  Maintain good eye contact with the other person throughout."  (ECF No. 86-8 at 26.) | Step four of "The Five Steps to Friendly Introductions" describes proper handshake technique as follows: "Put your arm out with your thumb straight up, place hands 'web to web,' grasp firmly but not too tightly, and shake from the elbow about two-three times.  Remember to look the person in the eye, not at your hands!"  (ECF No. 86-15 at 6.) |

This is common advice and therefore in the public domain—or, at a minimum, it is an unprotectable process or system.  It is also expressed in succinct, utilitarian language.  The merger doctrine therefore prevents Civility Experts from claiming copyright protection over the precise words used.

*  *  *

| *Proud to Be Polite* (Civility Experts) | *Kool to Be Kind* (Molly Manners) |
| --- | --- |
| Lesson 3.5, regarding giving and receiving compliments, counsels, "Accept a compliment graciously by saying a simple 'Thank you.'  Don't say 'This old dress?  It's just and [*sic*] old rag and I've had it for years.'  Such remarks insult the intelligence of the person giving the compliment. [¶] *This Excerpt by Louise Fox Protocol Solutions*."  (ECF No. 86-8 at 45 (emphasis in original).) | A portion of lesson 8 regarding giving and receiving compliments advises the following after receiving a compliment: "Simply smile and say 'thank you.'  Whatever you do, don't take away from the sincerity of the compliment by downplaying, denying it, it [*sic*] or criticizing yourself.  No need to say 'Well, it isn't my best art project by far....' or 'this dress is so old....' etc.  Just smile and thank the person (with eye contact!) emember [*sic*], they are trying to be nice in their compliment, so don't take away from their nice gesture."  (ECF No. 86-20 at 1.) |

Civility Experts says that Louise Fox Protocol Solutions "contributed" the portions attributed to it throughout *Proud to Be Polite*, suggesting that Civility Experts used the foregoing with permission.  (ECF No. 86-8 at 2.)  This raises the question of whether Civility Experts or Louise Fox is the proper plaintiff with respect to this passage.  The parties briefs provide no helpful discussion on this point.

Assuming for the sake of argument that Civility Experts is the proper plaintiff, Civility Experts cannot copyright the concept that self-deprecation is inappropriate when receiving compliments.  Nor can Civility Experts copyright the advice to smile and say

"thank you" as a substitute to self-deprecation—and there are only so many ways to express that concept.

After expressing the concept, of course, both of these passages move on to counterexamples.  In other words, they display the same arrangement.  The Court cannot deem this arrangement original, however.  Teaching by way of counterexamples is common, and the counterexamples can only be placed before, after, or interspersed with the instruction on appropriate behavior.

The fact that both Civility Experts and Molly Manners use a counterexample about an old dress is unremarkable.  In any discussion regarding self-deprecation, attempting to deflect compliments about clothing with phrases such as "this old thing?" are typical, and the *scenes a faire* doctrine therefore denies protection.

\* \* \*

| ***Proud to Be Polite* (Civility Experts)** | ***The Young Sophisticate* (Molly Manners)** |
|---|---|
| In the instructor's overview to a series of lessons regarding first impressions, the manual states that the goal is to help the students learn "five behaviors that are expected and respected in social and business settings":<br>"Arising when someone approaches us<br>"Smiling - an open mouth, toothy, spontaneous smile<br>"Offering a firm handshake<br>"Making direct eye contact<br>"Introducing yourself and/or initiating introductions of others."  (ECF No. 86-8 at 20.) | A portion of lesson 1, regarding first impressions, has the instructor teach the students "5 steps to friendly introductions":<br>"Stand up!<br>"Smile!<br>"See their eyes.<br>"Shake hands[.]<br>"Say, 'Hi, I'm Molly.  It's nice to meet you.'"  (ECF No. 86-24 at 3.) |

51

Molly Manners' "5 steps to friendly introductions" encourages the same five behaviors listed by Civility Experts, and in almost the same order (eye contact and shaking hands are swapped).  The problem for Civility Experts is that, in its own words, these are the "five behaviors that are expected . . . in social and business settings."  Thus, the selection and arrangement are *scenes a faire* because they are "dictated by external factors."  *Gates Rubber*, 9 F.3d at 838.

* * *

| *Proud to Be Polite* (Civility Experts) | *The Young Sophisticate* (Molly Manners) |
|---|---|
| Lesson 2.1, regarding first impressions, contains a worksheet listing fourteen behaviors that "send[] [a] positive impression," including: "smiling," "not slouching, standing when talking," "make direct eye contact," "study or do your homework," "stand up straight," "tell only appropriate jokes, see the upside of things, poke fun at yourself (sometimes) but not at others," "remember please and thank you," "don't be late," "talk about positive things," "stay calm," "let others talk, don't interrupt."  (ECF No. 86-8 at 23.) | A portion of lesson 1, regarding first impressions, asks the instructor to discuss ten "behaviors that send a positive first impression," including: "smiling," "saying positive things," "making eye-contact," "being prepared," "stand up straight, not slouching," "tell appropriate jokes; OK to poke fun at yourself, but not at others," "remembering please and thank you," "be on time," "stay calm," and "let others talk, don't interrupt."  (ECF No. 86-24 at 3.) |

Unlike Civility Experts' previously analyzed lists, the selection and arrangement of topics in this example display original expression.  For the most part, however, the merger doctrine leaves Civility Experts' word choice unprotected.  The one exception is the admonition about appropriate humor, which can be expressed in many ways without repeating Civility Experts' exact words.  For purposes of the substantial similarity analysis below, the Court will consider Molly Manners' near-total duplication of Civility

Experts' list, and of the specific language regarding appropriate humor.

\* \* \*

| ***Proud to Be Polite*** **(Civility Experts)** | ***The Young Sophisticate*** **(Molly Manners)** |
| --- | --- |
| Lesson 2.6, regarding remembering names, presents three headings for the instructor to emphasize, each followed by a short explanation; the headings are: "Make an Association," "Rhyme time," and "Repeat, Repeat, Repeat."  (ECF No. 86-8 at 95.) | In a portion of lesson 1, regarding first impressions, under the heading "Remembering Names," the text suggests the following memory techniques: "Repeat that person's name in your initial conversation," "Make a mental picture of the person doing something associated with their name," and "Find a rhyme associated with the person's name and make a mental picture."  (ECF No. 86-24 at 4.) |

This example entirely comprises *scenes a faire* for memory training, and there are no word choice similarities unprotected by the merger doctrine.  It provides no valid basis for comparison.  *Cf. Francorp, Inc. v. Siebert*, 210 F. Supp. 2d 961, 966 (N.D. Ill. 2001) (in the context of similar lists, denying copyright protection because "[t]he lists are organized differently, and the explanations are only similar to the extent they express the same concept").

\* \* \*

Having analyzed the various claims of similarity, do the valid claims present a jury question regarding substantial similarity?  Answering this question implicates a concept that *Nimmer on Copyright* has dubbed "fragmented literal similarity."  *See* 4-13 *Nimmer on Copyright* § 13.03[A] n.9 and accompanying text.  Fragmented literal similarity refers to the situation in which various verbatim or near-verbatim portions drawn from many places in the plaintiff's work appear in the defendant's work.  *See id.*

§ 13.03[A][2].  Quoting *Nimmer* on this point, the Tenth Circuit has stated, "Because '[n]o easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity,' whether works are substantially similar is 'a classic jury question.'"  *Jacobsen*, 287 F.3d at 943 (quoting 4-13 *Nimmer on Copyright* § 13.03[A][2][a] & n.96).  This does not mean, however, that fragmented literal similarity entirely precludes summary judgment.  If no reasonable jury could find substantial similarity out of this fragmented similarity, summary judgment is proper.  *See, e.g.*, *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) (affirming summary judgment in this context); *Louisiana Contractors Licensing Serv., Inc. v. Am. Contractors Exam Servs., Inc.*, 13 F. Supp. 3d 547, 553–54 (M.D. La. 2014) (granting summary judgment in this context), *aff'd*, 594 F. App'x 243 (5th Cir. 2015); *Feder*, 697 F. Supp. at 1173–77 (same); *Russell v. Turnbaugh*, 1991 WL 283837, at *3–5 & n.4 (D. Colo. Feb. 7, 1991) (same).

Although the valid comparisons analyzed above present some striking examples of what appears to be outright copying, the Court finds that no reasonable jury could conclude that any of them, individually or collectively, relate to portions of *Proud to Be Polite* that are "of great qualitative importance to the work as a whole."  *Werlin v. Reader's Digest Ass'n, Inc.*, 528 F. Supp. 451, 463 (S.D.N.Y. 1981).  Thus, Molly Manners has not infringed *Proud to Be Polite*.

## VI.  CLOSING CONSIDERATIONS

Civility Experts' frustration with Molly Manners is not surprising.  On this record, there is overwhelming evidence that Molly Manners, as a factual matter, copied from

Civility Experts Lessons.  Indeed, with a fully developed record, Civility Experts might even be able to show that Molly Manners intentionally set out to rework Civility Experts' Lessons in hopes of teaching much of the same material without violating Civility Experts' copyrights.  And the upshot of this Court's analysis—which could understandably stick in Civility Experts' craw—is that Molly Manners succeeded.

The problem for Civility Experts lies in the subject matter.  Instructional materials will necessarily run up against 17 U.S.C. § 102(b), the merger doctrine, and the *scenes a faire* doctrine much more than fictional literature, paintings, and so forth.  Nonetheless, the law requires filtering out those nonprotectable elements until the Court "is left with a core of protected elements that can be compared" to the defendant's work.  *Gates Rubber*, 9 F.3d at 838–39.  In Civility Experts' case, the core of protectable expression is relatively small.  *Cf.* 4-13 *Nimmer on Copyright* § 13.03[B][2][b] text accompanying n.160.10a ("even admitted literal copying is not actionable when limited to unoriginal expression").

Moreover, given 17 U.S.C. § 102(b)'s prohibition on copyrighting ideas, seemingly trivial changes can sometimes prevent copyright liability even with respect to fairly original instructional materials.  The Tenth Circuit's *Warrick* case, *supra*, is good example.  In *Warrick*, the plaintiff (Lippitt) developed an original theory of managing complex change in large organizations, and a diagram to explain that theory.  717 F.3d at 1113–14.  The diagram conveyed the message that such change would succeed only when five elements were present: vision, skills, incentives, resources, and an action plan.  *Id.* at 1114.  The diagram went on to show that, for example, possessing

all of these elements except vision would lead to confusion rather than success; that

possessing all of these elements except resources would lead to frustration rather than

success; and so forth.  *Id.*  In its final form, Lippitt's diagram was laid out with ovals

surrounding the various elements, plus signs connecting the ovals, and an equals sign

before the final result (success, confusion, frustration, etc.).  *Id.* at 1115.

The defendant (Warrick) admittedly took Lippitt's diagram and used it in his own

instructional materials almost verbatim.  He substituted rectangles for ovals, however,

and arrows for the plus signs and equals signs.  *Id.* at 1116.  Although this minimal

change was insufficient to avoid copyright liability, the Tenth Circuit reasoned that

additional alterations, none of them particularly dramatic, probably would have been

sufficient:

> Warrick argues Lippitt's diagram is not eligible for copyright
> protection because it consists only of unprotectable ideas or
> expression so intertwined with the underlying ideas as to
> lose their protection under  the merger doctrine.  In Warrick's
> view, Lippitt's diagram expresses a "fundamental" idea about
> organizational change and development.  It is, he says, a
> "statement about objective reality, not a work of fiction or the
> imagination."
>
> Warrick misses the point.  Although Lippitt's diagram may
> express an idea, Warrick could express the same ideas in
> his own fashion.  He might have organized the components
> in a pie-chart-style format to show how each is a component
> of a larger whole.  He could have approached the concept in
> a two-column format, listing each defect in the left column
> and the missing component in the right column.  He could
> have simply described the concepts in prose, as he did in his
> motion for summary judgment.  He could have used his own
> words to describe the components.  He might have broken
> down or combined the components in a different way.  He
> could have expressed the absence of one of the
> components with an "X" over the component . . . .

*Id.* at 1117–18 (citations omitted).

To the extent Molly Manners has copied from Civility Experts, the copying mostly takes these sorts of forms: prose expansions of abbreviated lists, alternative depictions, etc.  The fact that such arguably small changes can prevent copyright liability may be frustrating to authors such as Civility Experts.  Lippitt herself admittedly believed that "her rights extended even to the ideas underlying her diagram."  *Id.* at 1119 n.7.  But this view was "mistaken," *id.*, and remains mistaken as to Civility Experts.

All that said, Molly Manners is mistaken in its belief that defeating Civility Experts' copyright claim effectively absolves it of all liability.  (*See* ECF No. 85 at 2 n.1.) Although the meaning of the Settlement Agreement is not before the Court, it is at least arguable that the Settlement Agreement explicitly, or through the implied covenant of good faith and fair dealing, requires more of Molly Manners than simply avoiding copyright infringement.  With this in mind, and given the current stage and posture of the litigation, the parties would be well-advised to seriously consider private mediation, a settlement conference before the Magistrate Judge, or some other form of alternative dispute resolution to be held in the near future.

Finally, the Court notes two other pending motions: Defendant Felicia Knowles' and Defendant Shannon Combs' motions to dismiss for lack of personal jurisdiction. (ECF Nos. 121, 201.)  Both Knowles and Combs are Molly Manners licensees.  If the Court were to conclude that it possesses personal jurisdiction over Knowles and Combs, Civility Experts' copyright claim against those two defendants (Count 3) would necessarily fail in light of this order.  Moreover, there would be strong case for dismissing Civility Experts' claims for unfair competition (Count 4) and false advertising

(Count 5), because both appear to hang on copyright infringement.  That would leave only tortious interference with prospective economic advantage (Count 2).  There is a fair argument that, at least as to Knowles and Combs, the current complaint's allegations as to tortious interference are bare recitations of the elements.  (*See* ECF No. 47 ¶¶ 96–107.)

Rather than potentially face all of these arguments, the Court will establish a deadline by which Civility Experts may move to voluntarily dismiss Knowles and Combs,[14] or to file notice stating that it does not intend to do so.  If Civility Experts chooses the latter option, the Court will proceed to resolve the personal jurisdiction questions raised by Knowles and Combs.

## VII.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Molly Manners' Early Motion for Partial Summary Judgment (ECF No. 85) is GRANTED;

2.  Civility Experts claim of copyright infringement (Count 3) is DISMISSED as against Molly Manners; and

3.  On or before **March 21, 2016**, Civility Experts shall file either:

    a.  a notice of voluntary dismissal of Knowles, Combs, and/or Virta-Gupta, or

    b.  a notice stating which of these Defendants it has elected not to voluntarily dismiss at this time.

---

[14] Civility Experts is also encouraged to include Defendant Monika Virta-Gupta, who is currently in default, in the course of action it elects to take in this regard.  (*See* ECF No. 202.)

Dated this 7th day of March, 2016.

BY THE COURT:

William J. Martinez
United States District Judge